UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| J&J SPORTS PRODUCTIONS, INC, | § | No. 5:15–CV–352–DAE |
| as Broadcast Licensor of the May 5, | § | |
| 2012 Floyd Mayweather, Jr. v. Miguel | § | |
| Cotto Event, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| BANDERA COWBOY BAR LLC, | § | |
| individually and d/b/a 11TH STREET | § | |
| COWBOY BAR; and JAMES | § | |
| MCGROARTY a/k/a JAMES | § | |
| MICHAEL MCGROARTY a/k/a | § | |
| JAMES MCGROARTY, individually | § | |
| and d/b/a 11TH STREET COWBOY | § | |
| BAR, | § | |
| | § | |
| Defendants. | § | |

ORDER (1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT; AND (2) DENYING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

Before the Court are two motions: (1) a Motion for Summary

Judgment filed by J&J Sports Productions, Inc. ("Plaintiff") (Dkt. # 11); and (2) a

Motion for Summary Judgment filed by Bandera Cowboy Bar LLC ("Cowboy

Bar") and James M. McGroarty (collectively "Defendants") (Dkt. # 12).  Pursuant

to Local Rule 7(h), the Court finds this matter suitable for disposition without a

hearing.  After careful consideration of the briefs filed in support of and in

1

opposition to the competing motions, the Court, for the reasons that follow,

(1) **GRANTS** Plaintiff's Motion for Summary Judgment (Dkt. # 11); and (2)

**DENIES** Defendants' Motion for Summary Judgment (Dkt. # 12).

<u>BACKGROUND</u>

This case arises out of a broadcast of the May 5, 2012 Floyd

Mayweather, Jr. v. Miguel Cotto, WBA World Light Middleweight Championship

Fight Program ("the Event") at the 11th Street Cowboy Bar, located at 307 11th

Street, Bandera, Texas, 78003 ("the Establishment").  (Dkt. # 1 ¶¶ 1−2, 6−8.)  The

Establishment is a commercial establishment opened to the public ("Cowboy Bar

Admis.," Dkt. # 19, Ex. C ¶¶ 9−10) with a maximum occupancy of 24 ("Cert. of

Occupancy," Dkt. # 17 at 5).

Plaintiff is in the business of licensing commercial exhibitions of pay-

per-view closed-circuit events.  ("Riley Aff.," Dkt. # 19, Ex. A ¶ 4.)  Cowboy Bar

is a limited liability company organized under the laws of Texas.  (Dkt. # 21, Ex.

B.)  (Id.)  In 2010 and 2012, Cowboy Bar filed a Texas Franchise Tax Public

Information Report indicating that Defendant McGroarty was the sole officer,

director, or member of Cowboy Bar.  (Id.)  Further, Cowboy Bar admits that it is a

member managed LLC and that Defendant McGroarty was the managing member

of the LLC.[1]  (Cowboy Bar Admis. ¶¶ 48−50.)  Cowboy Bar also admits that it is

---

[1] McGroarty only admits that he was a member of the LLC.

the entity that owned the Establishment on the date of the Event (id. ¶ 39), and that its officers had a right to control the Establishment on the date of the Event (id. ¶ 42).

On May 5, 2012, Plaintiff was the only official licensor of the Event for commercial establishments in the state of Texas.  (Riley Aff. ¶¶ 4−5; "License Agreement," Dkt. # 19, Ex. A-1.)  Accordingly, commercial establishments in Texas were required to obtain a sub-license from Plaintiff to broadcast the Event.

The transmission of the Event originated from a satellite.  (Riley Aff. ¶ 6.)  In order to prevent unlicensed interception and receipt of the Event, the satellite signal for the Event was electronically coded or scrambled.  (Id.)  If a commercial establishment purchased a license for the Event, then Plaintiff would provide that establishment with electronic decoding equipment and the satellite coordinates to receive and decode the signal so that an event could be shown on a television.  (Id.)

The sublicense fee to broadcast the Event depended upon the commercial establishment's occupancy capacity.  ("Rate Card," Dkt. # 19, Ex. A-3.)  For example, if the capacity was between 0−100 people, then the sublicense rate for the Event was $2,200; if the capacity was between 401−500, then the sublicense rate was $10,200.  (Id.)

On May 5, 2012, Cody Cotton, an investigator for McMahan Security and Investigations, entered the Establishment after paying a $5.00 cover charge. ("Cotton Aff.,"  Dkt. # 19, Ex. A-2.)  Cotton attests that at 8:00 p.m. the Event aired on all televisions present in the Establishment and that between 31 to 34 patrons were present.  (Id.)  Cowboy Bar and McGroarty both admit that the Establishment broadcast the Event (Cowboy Bar Admis. ¶ 8; "McGroarty Admis.," Dkt. # 19, Ex. D. ¶ 8) and that they did not order the Event for the Establishment nor pay the fee for a license from Plaintiff (Cowboy Bar Admis. ¶¶ 1, 3; McGroarty Admis. ¶¶ 1, 3, 4).  Defendants also admit that the Establishment uses satellite services to receive television programming through an account with DirectTv. (Cowboy Bar Admis. ¶ 35; McGroarty Admis. ¶ 35.)  Further, Plaintiff submitted a photograph of a satellite dish attached to the roof of the Establishment. (Dkt. # 19, Ex. A-2.)

On the date of the Event, Defendant McGroarty was not present at the Establishment and was unable to presently supervise the activities at the Establishment.  ("McGroarty Aff.," Dkt. # 17 ¶ 2.)  However, McGroarty admits that he had the right to supervise the activities of the Establishment on the date of the Event.  (McGroarty Admis. ¶ 44.)

On April 30, 2015, Plaintiff filed this lawsuit alleging that Defendants violated either 47 U.S.C. § 553 or 47 U.S.C. § 605.  On February 22, 2016,

4

Plaintiff filed its motion for summary judgment seeking relief pursuant only to 47

U.S.C. § 605.  (Dkt. # 11.)  The same day, Defendants filed their motion for

summary judgment.  (Dkt. # 12.)  Both parties filed responses.  (Dkts. ## 14, 20.)

LEGAL STANDARD

A court must grant summary judgment when "the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Meadaa v. K.A.P.

Enterprises, L.L.C., 756 F.3d 875, 880 (5th Cir. 2014).  "Substantive law will

identify which facts are material."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248 (1986).  A dispute is only genuine "if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party."  Id.

In seeking summary judgment, the moving party bears the initial

burden of demonstrating the absence of a genuine issue of material fact.  Celotex

Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party meets this burden,

the nonmoving party must come forward with specific facts that establish the

existence of a genuine issue for trial.  Distribuidora Mari Jose, S.A. de C.V. v.

Transmaritime, Inc., 738 F.3d 703, 706 (5th Cir. 2013) (quoting Allen v. Rapides

Parish Sch. Bd., 204 F.3d 619, 621 (5th Cir. 2000)).  "Where the record taken as a

whole could not lead a rational trier of fact to find for the non-moving party, there

is no genuine issue for trial."  Hillman v. Loga, 697 F.3d 299, 302 (5th Cir. 2012).

5

In deciding whether a fact issue has been created, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Kevin M. Ehringer Enters. v. McData Servs. Corp., 646 F.3d 321, 326 (5th Cir. 2011) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)). However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." United States v. Renda Marine, Inc., 667 F.3d 651, 655 (5th Cir. 2012) (quoting Brown v. City of Hous., 337 F.3d 539, 541 (5th Cir. 2003)).

DISCUSSION

I.    The Communications Act

Plaintiff solely seeks summary judgment under the Federal Communications Act of 1934 as amended, 47 U.S.C. § 605.

A. Liability under 47 U.S.C. § 605

Section 605 covers the unlawful interception or receipt of communications traveling through the air, such as a satellite signal, whereas 47 U.S.C. § 553 covers unlawful receipt of communications traveling via a cable wire. See J&J Sports Prods., Inc. v. Mandell Family Ventures, L.L.C., 751 F.3d 346, 352−53 (5th Cir. 2014). Section 605(a) provides that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or

publish the existence, contents, [or] substance . . . of such intercepted communication to any person."  47 U.S.C. § 605(a).  Section 605 is a strict liability statute.  Joe Hand Promotions, Inc. v. 152 Bronx, L.P., 11 F. Supp. 3d 747, 753 (S.D. Tex. 2014); G&G Closed Circuit Events, LLC v. Cisneros, No. 5:15-CV-302-DAE, 2016 WL 1322485, at *2 (W.D. Tex. Apr. 1, 2016).  Since Plaintiff was the exclusive licensor of the Event, to succeed on a cause of action brought pursuant to 47 U.S.C. § 605(a), Plaintiff need only prove that (1) the Event was shown in the Defendants' Establishment; and (2) Plaintiff did not authorize the exhibition of the Event there.[2]  152 Bronx, L.P., 11 F. Supp. 3d at 753.

### 1.  Liability for Cowboy Bar

In this case, the summary judgment evidence indicates that there is no genuine dispute that the Establishment broadcasted the Event.  Investigator Cotton stated in a sworn affidavit that he observed the Event on televisions at the

---

[2] The Court notes that district courts outside of the Fifth Circuit apply a slightly different test to impose liability under 47 U.S.C. § 605.  Some district courts outside of Texas require a plaintiff to prove that the defendant (1) intercepted or aided the interception of and (2) divulged or published, or aided the divulging or publishing of, a communication transmitted by the plaintiff.  See J&J Sports Prods., Inc. v. Pindeo, CV 14-062016 WL 1254164, at *2 (C.D. Cal. Mar. 24, 2016) (citing Cal. Satellite Sys. v. Seimon, 767 F.2d 1264, 1366 (9th Cir. 1985)).  While the phrasing within the tests is different, the application of the facts to the law produces the same result.  For example, in the exclusive licensor context, like here, proof that a closed-circuit television program was broadcasted at a venue automatically presumes that an interception of the closed-circuit signal had to occur because such signals are scrambled and signals do not descramble themselves without interception.

Establishment and both Cowboy Bar and McGroarty admit that the Establishment broadcasted the Event. (Cowboy Bar Admis. ¶ 8; McGroarty Admis. ¶ 8.) The evidence also indicates there is no genuine dispute that Plaintiff did not authorize the exhibition of the Event at the Establishment. Cowboy Bar and McGroarty admit that they did not order the event, did not pay a licensing fee, and neither received authorization nor permission from Plaintiff to show the Event. (Cowboy Bar Admis. ¶¶ 1, 3, 14−16; McGroarty Admis. ¶¶ 1, 3, 14, 16, 19.) Defendants assert that a patron brought his own equipment into the Establishment and caused the Event to be broadcasted. (McGroarty Aff. ¶ 2.) Since Section 605 is a strict liability statute, this fact is irrelevant to liability. Accordingly, the Court finds that no genuine dispute exists as to whether Cowboy Bar violated 47 U.S.C. § 605(a).

Defendants argue that Plaintiff is not entitled to summary judgment because there is no evidence of the type of signal received. (Dkt. # 12 at 8−9.) As previously mentioned, 47 U.S.C. § 605 is a strict liability statute and a Plaintiff need only prove that the Event was broadcast and that Plaintiff did not authorize the event. 152 Bronx, L.P., 11 F. Supp. 3d at 753. Some courts, however, require a showing that the signal did in fact travel through the air because Section 605 covers the unlawful interception or receipt of communications traveling through the air, while 47 U.S.C. § 553 covers receipt of communications traveling via a cable. See Joe Hand Promotions, Inc. v. Breaktime Bar, LLC, 2014 WL 1870633,

at *4 (W.D. La. May 8, 2014) (denying summary judgment because plaintiff failed to show that the event was broadcast via satellite).  Here, Plaintiff has proffered evidence by affidavit that "[t]he transmission of the Event originated via satellite." (Riley Aff. ¶ 6.)  Defendants have offered no evidence to raise a genuine dispute that the Establishment's broadcast of the event occurred through a method other than a satellite signal.  Indeed, Defendants admit that DirectTv satellite services provide normal television programming at the Establishment and deny that the Establishment uses cable services.  (Cowboy Bar Admis. ¶¶ 31, 35.)  Further, the evidence in this case indicates that there is a satellite dish on the roof of the Establishment.  Accordingly, the Court finds that there is no genuine dispute that the Event reached the Establishment via a satellite signal.

Next, Defendants contend that Plaintiff is not entitled to summary judgment because Plaintiff has failed to provide evidence of an interception of a satellite signal.  The Court agrees that the statutory language of Section 605(a) requires an interception of a signal in order to impose liability.  However, the Court disagrees with Defendants that Plaintiff has failed to produce adequate summary judgment evidence that an interception occurred.  Plaintiff has provided an affidavit demonstrating that the transmitted satellite signal of the Event was electronically scrambled and the only way to receive the satellite transmission of the Event was to use electronic decoding equipment authorized by Plaintiff.  (Riley

Aff. ¶¶ 5–6.)  Since Plaintiff was the exclusive licensor of the Event, a commercial establishment needed Plaintiff's authorization to receive the broadcast.  Therefore, in order for an unauthorized commercial establishment to receive the scrambled signal, there must be some type of wrongful action to intercept and unscramble the signal such as an unauthorized decoder or satellite access card.  (Id. ¶ 10.)  After all, scrambled satellite signals do not unscramble themselves.  Curiously, despite arguing no evidence exists that they intercepted the decoded signal, Defendants submit evidence in the same breath that "a customer [used] his own equipment that was brought into the bar" that enabled the Establishment to broadcast the Event.  The fact that a patron, and not Defendants, may have intercepted the signal is an irrelevant fact for purposes of avoiding liability because Section 605 is a strict liability statute.  Defendants present no evidence to contradict this fact in order to raise a genuine dispute about whether or not an interception occurred.  Accordingly, drawing all reasonable inferences in favor of Defendant as the non-moving party, the Court finds that there is no genuine dispute that an interception of the Event's signal occurred.

### 2.  Liability for James McGroarty

47 U.S.C. § 605 has been "interpreted to allow [an aggrieved person] to hold [a person] individually [vicariously] liable if he had (1) the right and ability to supervise the unauthorized activities of the establishment in those activities and

(2) an obvious and direct financial interest in those activities." 152 Bronx, L.P., 11 F. Supp. 3d 747, 753 (quoting Joe Hand Promotions, Inc. v. Ambiente Bar LLC, Civ A. No. 7:13-CV-132, 2014 WL 580767, at *2 (S.D. Tex. Feb 13, 2014)). District courts apply this test to determine individual liability even where the individual plaintiff is an officer of the corporate entity that owns the establishment where the violation occurred. See J&J Sports Prods., Inc. v. 291 Bar & Lounge, LLC, 648 F. Supp. 2d 469, 473 (E.D.N.Y. 2009) (recognizing that 47 U.S.C. § 605 imposes individual liability on corporate defendants); J&J Sports Prods., Inc. v. Matti, No. 13−13963, 2015 WL 143932, at *3 (E.D. Mich. Jan. 12, 2015) (finding the sole member of an LLC individually liable under 47 U.S.C. § 605 despite LLC being the legal owner of the establishment); J&J Sports Prod., Inc. v. El 33, LLC, No. EP−11−CV−519−KC, 2013 WL 164521, at *4 (W.D. Tex. Jan. 13, 2013) (holding the LLC owner individually liable for violations of Section 605(a)).

In this case, Defendant McGroarty has admitted to all the necessary elements to establish vicarious liability. First, he admits that he had "the right to supervise the activities of the Establishment on the date of the Event." (McGroarty Admis. ¶ 44.) Second, Defendant McGroarty has admitted the other elements to impose vicarious liability by failing to specifically deny allegations in his answer. (See "Ans.," Dkt. # 5 ¶ 3; Fed. R. Civ. P. 8(b)(4).) Plaintiff expressly alleges in paragraph three of its complaint that McGroarty:

11

> (1) held the license/permit issued by the Texas Alcoholic Beverage Commission for the Establishment, located at 305-07 11th Street, Bandera, Texas 78003;
>
> (2) owned and/or operated the Establishment;
>
> (3) had a right and ability to supervise the activities of the Establishment; and
>
> (4) had an obvious and direct financial interest in the activities of the Establishment."

(Dkt. # 1 ¶ 3.)  McGroarty only responded to these allegations in his answer with the sentence "[a]dmit that the individual was an officer of the entity owning the establishment."  (Ans. ¶ 3.)  The Federal Rules of Civil Procedure are clear that "a party that intends in good faith to deny only part of an allegation must admit the part that is true and deny the rest."  Fed. R. Civ. P. 8(b)(4).  "An allegation . . . is admitted if a responsive pleading is required and the allegation is not denied."  Id. R. 8(b)(6).  In this case, McGroarty failed to directly respond to any of the four allegations made in paragraph three of the complaint.  The Court finds that responding to the four allegations by admitting only that he was an officer of the entity that owned the Establishment was not a denial that "fairly respond[ed] to the substance of the allegation," as a denial must.  Id. R. 8(b)(2).  Here, because McGroarty did not specifically deny the allegations made in paragraph three of the complaint, those allegations are deemed admitted.  McGroarty states that he was not physically present at the Establishment presumably to imply that he did not

have the ability to supervise.  (McGroarty Aff. ¶ 2.)  However, construing the

evidence in the light most favorable to McGroarty as the Court must, McGroarty's

absence from the Establishment is not sufficient evidence to create a genuine

dispute over whether he had the ability to control events in light of his previous

deemed admissions.  Accordingly, the Court finds that there is no genuine dispute

that McGroarty had (1) the right and ability to supervise the activities of the

establishment; and (2) an obvious and direct financial interest in those activities.

Therefore, McGroarty is liable for Cowboy Bar's violation of 47 U.S.C. § 605(a).

      B.  <u>Damages under 47 U.S.C. § 605</u>

          1.  <u>Statutory Damages</u>

An aggrieved party may recover statutory damages for each violation

of § 605 "in a sum of not less than $1,000 or more than $10,000, as the court

considers just" for each violation.  47 U.S.C. § 605(e)(3)(C)(i)(II).  Here, the

unauthorized broadcast of the Event constitutes a single violation.  Plaintiff

charged a $2,200 license fee to commercial establishments of comparable size as

the Establishment.  However, the license fee is not the only cost lost by Plaintiff.

As Plaintiff's affidavit explains:

> Defendants' actions have eroded the base of Plaintiff's customers.
> Each patron of Defendants' Establishment was lost as a patron of
> authorized broadcasts.  But for Defendants' unauthorized broadcast of
> the Event, all or some of the patrons of Defendants' Establishment
> would have become patrons of authorized establishments, which

> encourages authorized establishments to continue to purchase
> additional events."

(Riley Aff. ¶ 13.)  The Court finds that the direct loss of $2,200 and the potential

erosion of Plaintiff's customer base requires a statutory damage award of $3,500 to

make Plaintiff whole and deter future violations.

## 2.  Willful Damages

If a the Court finds that "the violation was committed willfully and for

purposes of direct or indirect commercial advantage or private financial gain, the

court in its discretion may increase the award of damages," but not more than

$100,000 per violation.  47 U.S.C. § 605(e)(3)(c)(ii).

Here, the evidence indicates that the violation was committed

willfully.  Defendants admit that they did not enter into a contract with Plaintiff to

purchase the Event for the Establishment.  In this case, Defendants admit that a

patron brought in "his equipment" into the Establishment to broadcast the event.

The Court finds that allowing a patron to connect "his equipment" to the

Establishment's televisions is indicative of willfulness.  Next, the Court finds that

charging a $5 cover charge on the night of the Event demonstrates a direct private

financial gain.  See Garden City Boxing Club, Inc. v. Sacks, No. B-07-97, 2008

WL 1711478, at *2 (S.D. Tex. Apr. 10, 2008) (finding a cover charge sufficient

evidence of a direct private financial gain).  The Court finds that a damages award

two times the statutory amount is appropriate.  Id. at *3 (finding treble damages to

be appropriate in these types of cases).  Accordingly, the Court awards $7,000 in willful damages.

CONCLUSION

For the aforementioned reasons, the Court **GRANTS** Plaintiff's Motion for Summary Judgment (Dkt. # 11) and **DENIES** Defendants' Motion for Summary Judgment (Dkt # 12).  The Court **ORDERS** that Defendants pay Plaintiff $3,500 in statutory damages pursuant to 47 U.S.C § 605(e)(3)(C)(i)(II), $7,000 in damages pursuant to  47 U.S.C. § 605(e)(3)(C)(ii), and attorneys' fees in the amount of $3,465 pursuant to 47 U.S.C. § 605 (e)(3)(B)(iii), which is one third of the total recovery.  The hearing scheduled for July 6, 2016, is cancelled.

**IT IS SO ORDERED.**

**DATE:** San Antonio, Texas, May 2, 2016.

_____
DAVID ALAN EZRA
UNITED STATES DISTRICT JUDGE